UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PAMLAB, L.L.C., | CIVIL ACTION NO. _____ |
| Plaintiff, | SECTION \_\_\_ |
| v. | MAGISTRATE DIVISION \_\_\_ |
| SETON PHARMACEUTICALS, LLC, | **JURY DEMANDED** |
| Defendant. | |

## PLAINTIFF PAMLAB, L.L.C.'S ORIGINAL COMPLAINT

Plaintiff Pamlab, L.L.C. ("Pamlab") files this Original Complaint against Defendant Seton Pharmaceuticals, LLC ("Seton") for false advertising and unfair competition under Section 43(a) of the Lanham Act, and violations of Louisiana's Unfair Trade Practices and Consumer Protection law and Louisiana Civil Code Article 2315.

## PARTIES

1. Pamlab is a limited liability company organized under the laws of Louisiana, having its principal place of business in Covington, St. Tammany Parish, Louisiana. Pamlab is a fully integrated pharmaceutical company that specializes in the development of prescription medical foods that are marketed and sold nationally. Among the products Pamlab markets is Deplin® ("DEPLIN") an orally administered medical food for the dietary management of patients suffering from depression and suboptimal folate levels. Unlike products containing folic acid, DEPLIN has the active, naturally occurring form of folate (L-methylfolate) used by the body. DEPLIN is available only with medical supervision.

2. Defendant Seton is, on information and belief, a limited liability company organized under the laws of New Jersey, and having its principal place of business at Atlantic Corporate Center, 2317 Highway 34, Ste. 1E, Manasquan, NJ 08736. Seton markets, promotes,

advertises, offers for sale, sells and distributes an allegedly "generic" version of DEPLIN it has dubbed DuLeek-Dp ("DuLeek")[1] which it has represented as containing the same active ingredient in the same strengths as DEPLIN, to customers including wholesalers, retailers, chains, distributors, mail order houses, independent pharmacies, managed care organizations and/or others throughout the United States, including in the Eastern District of Louisiana. Seton may be served with process by serving a copy of the Complaint on its registered agent for service of process: Matthew J. Regan, Atlantic Corporate Center, 2317 Highway 34, Suite 1E, Manasquan, NJ 08736.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over the subject matter of this lawsuit under 28 U.S.C. § 1331 and 15 U.S.C. § 1221(a), because it concerns violation of section 43 of the Lanham Act, 15 U.S.C. § 1125. Additionally, the amount in controversy exceeds $75,000 and involves citizens of different states.

4. The exercise of personal jurisdiction in Louisiana is proper because acts giving rise to Plaintiff's causes of action have occurred in the State of Louisiana and, more particularly, within the Eastern District of Louisiana. More specifically, Seton markets, promotes, advertises, offers for sale, sells and/or distributes DuLeek to customers including wholesalers, retailers, chains, distributors, mail order houses, independent pharmacies, managed care organizations and/or others throughout the United States, including in the Eastern District of Louisiana. Defendant has purposefully and voluntarily placed DuLeek into the stream of commerce with the expectation that it will be purchased by consumers in the Eastern District of Louisiana. Consumers have purchased and continue to purchase DuLeek in the Eastern District of

---

[1] Seton has marketed this product with several strengths, including "DuLeek-Dp 7.5 mg" and "DuLeek-Dp 15 mg." These will be referred to collectively as "DuLeek."

Louisiana. Furthermore, Seton falsely promotes DuLeek as a generic equivalent to and substitute for DEPLIN to customers including wholesalers, retailers, chains, distributors, mail order houses, independent pharmacies, managed care organizations and/or others throughout the United States, including in the Eastern District of Louisiana.

5. Venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 1391.

## BACKGROUND

**DEPLIN Is A Serious Medical Food Product For A Serious Condition**

6. Pamlab is an integrated specialty pharmaceutical company with development and commercial capabilities focused primarily on prescription medical foods. Among its specific focus areas are the development of therapies to address the needs of depressed patients.

7. One in six Americans will experience an episode of major depression in their lifetime. In any given year, over 18 million people will have a depressive illness that warrants treatment. Based on data from 2004 and 2005, the federal government estimated that over 7% of adults in Louisiana experienced a major depressive episode, and an even larger percentage of Louisiana youths aged twelve to seventeen years experienced a major depressive episode during this time frame. Depression can be a serious and even life-threatening disease. Its symptoms may include persistent sad, anxious or empty feelings; feelings of hopelessness and/or pessimism; feelings of guilt, worthlessness and/or helplessness; irritability, restlessness, loss of interest in activities or hobbies once pleasurable; fatigue and decreased energy; difficulty concentrating, remembering details, and making decisions; insomnia, early-morning wakefulness, or excessive sleeping, overeating or appetite loss; thoughts of suicide and suicide attempts; and persistent aches or pains, headaches, cramps or digestive problems that do not ease even with treatment. In Louisiana, suicide is the twelfth ranking cause of death, with an

incidence of 12.0 per 100,000.  The hospitalization rate for attempted suicides is over 62 per 100,000, with a per-case cost of medical care and work loss of over $17,000, for a total cost of over $45,000,000.

8. Depression is associated with an imbalance of the three neurotransmitters (chemical messengers) in the brain associated with mood: serotonin, norepinephrine and dopamine.  Most antidepressants are believed to work by addressing the imbalance of neurotransmitters in the brain.  Antidepressants such as SSRIs (selective serotonin reuptake inhibitors) and SNRIs (serotonin, norepinephrine reuptake inhibitors) do this by blocking the reabsorption of neurotransmitters allowing the brain to have greater use of available neurotransmitters.

9. Unfortunately, almost two-thirds (2/3) of depressed patients have lingering symptoms or no response after antidepressant therapy.  This partial or non-response to treatment is common when the brain lacks adequate neurotransmitters due to insufficient usable folate in the brain. In such patients, antidepressants cannot fully work.

10. DEPLIN is designed to help antidepressants work better by correcting folate levels in the brain.  DEPLIN delivers L-methylfolate, a trimonoamine modulator (TMM) which boosts the synthesis of monoamine neurotransmitters (serotonin, norepinephrine and dopamine). By managing trimonoamine neurotransmitter synthesis, the L-methylfolate in DEPLIN improves the way antidepressants work.

**Folate, Folic Acid and L-methylfolate**

11. Folates are water-soluble B-vitamins that play a key role in central metabolic pathways.  Folates are, for example, needed for cell division or cell repair.  When a person has

insufficient usable folate levels in the brain, it adversely affects the production and synthesis of neurotransmitters. For these patients, an antidepressant cannot work fully.

12. Human cells cannot produce folates. Instead a person must obtain folate either from dietary sources or from supplements. The naturally occurring form of folate that is directly usable by cells in the body is L-methylfolate. L-methylfolate is the body's preferred form of folate, and the only one able to cross the blood-brain barrier.

13. L-methylfolate is the predominant form of folate in natural food; it is found, for example, in green, leafy vegetables. However, during the cooking and processing of food, folates are lost, and many people are unable to obtain sufficient L-methylfolate from their diet alone to satisfy their folate needs.

14. While L-methylfolate is the naturally occurring form of folate and is found in natural foods, it is not easily synthesized into a stable supplement. Folic acid, a source of folate which does not occur in nature, is much easier to fabricate; it was first synthesized in 1945. Until approximately 2001, folic acid was the only source of folate supplementation commonly available in the United States.

15. Folic acid is widely available in multi-vitamins and as a dietary supplement. In addition, folic acid is added to many processed foods. While many people can easily metabolize folic acid and convert it into L-methylfolate, it is estimated that over 50% of Americans suffer from a genetic mutation that limits their body's ability to metabolize folic acid. One such mutation is called MTHFR C→T polymorphism. This common mutation is especially prevalent in patients suffering from depression.[2]

---

[2] Low folate levels in depressed patients can also be due to chronic disease, the interaction of certain prescription drugs, and/or or pregnancy.

16.     In short, while folic acid has helped tens of millions of Americans obtain proper L-methylfolate levels, common genetic mutations have left tens of millions more with insufficient amounts of this key nutrient.  In the mid-1990's, Merck & Cie (formerly known as Merck Eprova AG) ("Merck") made a key breakthrough, and invented a process to synthesize L-methylfolate in a stable form.  Offered under the name Metafolin® (METAFOLIN), L-methylfolate[3] is the crystalline, stable and diastereoisomericly pure[4] form of folate directly usable by cells in the body.

**Pamlab Develops DEPLIN To Help Patients With Depression**

17.     METAFOLIN is protected by a comprehensive set of patents and patent applications on the substance, key intermediates, production processes and its use in specific fields.  In January 2000, Pamlab entered into an exclusive license agreement with Merck, under which Pamlab was granted a license to make, use and sell certain dietary supplements, formulations or medical foods using L-methylfolate.

18.     Pamlab developed and began marketing DEPLIN as an orally administered medical food for the dietary management of suboptimal folate levels in depressed patients.  DEPLIN delivers L-methylfolate, as METAFOLIN, to help antidepressants work better by correcting folate levels in the brain.

19.     The use of L-methylfolate is described on DEPLIN's label and package insert.  The presence of this dietary ingredient in DEPLIN is used as the more significant selling point

---

[3] Synonyms for L-methylfolate include L-5-MTHF-Ca; L-methylfolate calcium; L-5-methyltetrahydrofolic acid, calcium salt; [6S]-5-methyltetrahydrofolic acid, calcium salt.

[4] Some compounds occur as mixtures of two or more diastereoisomers.  These diastereoisomers have the same chemical composition but differ in the spatial arrangement of the atoms.  Diastereoisomers are distinguished from one another through naming conventions that reflect their different properties.  One naming convention uses a "D" in the name of the compound for one diastereoisomer and an "L" in the name of the compound to indicate a different diastereoisomer.  In this case, L-methylfolate is the active isoform, while the "D" diastereoisomer is inactive and not beneficial to humans.  METAFOLIN is the active "L" isomer and may contain only trace amounts (less than 1%) of the "D"-isomer as an impurity.

by Pamlab, and distinguishes it from the many products available which provide folic acid. While the L-methylfolate in DEPLIN does not need to be converted by the body prior to use but instead is a form of folate which can cross the blood-brain barrier, folic acid must be metabolized through a complex four-step process before it can be used by the body's cells, including those in the brain:



This unique feature allows DEPLIN the chance to help the 70% of patients with depression who have a compromised ability to metabolize folic acid into L-methylfolate. Even patients who are able to metabolize folic acid can benefit from the L-methylfolate in DEPLIN: L-methylfolate is far more bioavailable than folic acid. For example, one DEPLIN 7.5 mg tablet provides the bioequivalent L-methylfolate of 66 (800 mcg) folic acid tablets.

20. Pamlab has expended substantial resources developing, testing and marketing DEPLIN. In addition, Pamlab's representatives have met with doctors and other prescribers not only to provide information on the use and benefits of DEPLIN, and also to provide doctors with samples of DEPLIN. Pamlab's efforts have succeeded to the extent that its sales of DEPLIN are expected to exceed $26,000,000 by the end of 2010.

**Defendant Develops And Markets Its Knock-Off Product To Exploit DEPLIN's Success**

21. Seton is a New Jersey-based pharmaceutical company that develops, manufactures, markets and sells pharmaceutical products. Seton describes itself as "a specialty generic pharmaceutical company," a "unique generic pharmaceutical company" and a "'boutique' generic pharmaceutical company," and claims to sell "lower cost alternative[s] to popular brand pharmaceutical products," that is, generic pharmaceutical products that it claims are equivalent to brand name products already available on the market. Seton does not market its alleged generic equivalent drug products to physicians. Rather, it convinces drug wholesalers, distributors, pharmacies, pharmacists and national drug databases that its products are generic substitutes for brand-name drugs. Its sales result from pharmacist substitution of its products for brand-name drugs that are actually prescribed by physicians, psychiatrists, and other prescribers.

22. Seton promotes, markets, sells and distributes its products nationwide, including in Louisiana and this judicial district.

23. Seton recently saw an opportunity to exploit the reputation and success of DEPLIN by crafting DuLeek, an alleged knock-off medical food product. Specifically, Seton engaged in the distribution, marketing, sale and/or offer for sale of DuLeek as an alleged generic version of DEPLIN.

24. Seton has not licensed the use of METAFOLIN from Merck. Merck has not given Seton permission to make, use or sell products with L-methylfolate. On information and belief, DuLeek does not contain L-methylfolate at all. **Rather, it contains ordinary folic acid – the very ingredient many DEPLIN patients simply cannot metabolize, or cannot metabolize in sufficient amounts to be of benefit.**

25. Although DuLeek contains only folic acid, Seton contacted national pharmaceutical databases and supplied those databases with information promoting DuLeek as having "L-methylfolate" in an amount identical to that used in DEPLIN. Seton explicitly or implicitly represented to the national pharmaceutical databases, and both directly and through the databases to other customers, that DuLeek is equivalent to and substitutable for DEPLIN.

26. Notwithstanding the Defendant's claims to national pharmaceutical databases that DuLeek contains the same ingredient – L-methylfolate – in the same strength – 7.5 mg and 15 mg – as DEPLIN, it does not. DuLeek contains only folic acid. Folic acid and L-methylfolate are scientifically defined as distinct and separate ingredients. In part because a large percentage of Americans are incapable of fully metabolizing folic acid, patients can have very different outcomes if they are given folic acid instead of L-methylfolate. Even patients capable of metabolizing folic acid will not receive a comparable product because folic acid is less bioavailable than L-methylfolate. In short, 7.5 mg or 15 mg of folic acid is not bioequivalent to 7.5 mg or 15 mg of L-methylfolate respectively.

27. In addition to expressly claiming and implying that DuLeek contains L-methylfolate, Seton has labeled DuLeek as containing "folate." Folic acid is a source of "folate," however, it is misleading for Seton – a generic company – to promote DuLeek – a purported generic for DEPLIN – as containing "folate" to imply that DuLeek actually has L-methylfolate.

By referring to the folic acid in DuLeek as "folate" on its label while also claiming in advertising and promotional materials that DuLeek contains L-methylfolate, Seton has sought to and has succeeded in creating the misimpression that the folic acid in DuLeek is the same as the L-methylfolate in DEPLIN.

28. Seton's advertising and promotional claims that DuLeek contains L-methylfolate is false and misleading. Seton made these false and misleading representations in order to have DuLeek "linked" to DEPLIN by the national pharmaceutical databases so that DuLeek would be seen by the market, including pharmaceutical wholesalers, pharmaceutical retailers and pharmacists as equivalent to and substitutable for DEPLIN.

**Defendant Markets DuLeek As A Generic Substitute For DEPLIN**

29. Seton seeks to capture market share from DEPLIN by encouraging pharmacist substitution of DuLeek for DEPLIN. In its commercial advertising and promotion to national pharmaceutical databases, and either directly or through the national pharmaceutical databases to drug wholesalers, pharmacies, pharmacists and others in the pharmaceutical distribution chain, Seton states and implies that DuLeek contains the same active ingredient in the same amount as DEPLIN and is a generic version of DEPLIN. Seton explicitly or implicitly represents to the national pharmaceutical databases, and both directly and through the databases to other customers, that DuLeek is substitutable for DEPLIN.

30. Defendant's efforts have had their intended effect; based upon Defendant's commercial advertising and promotion, drug databases as well as wholesalers, pharmacies and others "linked" DuLeek as a generic equivalent to DEPLIN and list DuLeek as containing L-methylfolate in the same amount as DEPLIN. As a result of Defendant's commercial advertising and promotion, wholesalers and pharmacies in the Eastern District of Louisiana and across the state and the rest of

the country have ceased to purchase DEPLIN, believing that DuLeek is a generic substitute. This could not occur unless Defendant had successfully created the false impression among drug databases, wholesalers, pharmacies, pharmacists and others in the pharmaceutical distribution chain that DuLeek is genuinely generic to and substitutable for DEPLIN.

31.     Defendant has failed to correct the false impression it has created among drug databases, wholesalers, pharmacies, pharmacists and others in the pharmaceutical distribution chain concerning the nature of DuLeek, and instead through its false and misleading representations in commercial advertising has encouraged and enabled pharmacist substitution of DuLeek for prescriptions actually written for DEPLIN.

**DuLeek Is Not A Generic Equivalent To Or A Substitute For DEPLIN**

32.     A pharmacist presented with a doctor's prescription for a brand-name product may fill that prescription by dispensing the product prescribed or an identical, "generic" version of the product. This process is known as generic or pharmacist substitution.

33.     A generic product is identical – or therapeutically equivalent – to a brand name product in dosage form, safety, strength, route of administration, quality, performance characteristics and intended use. Therapeutically equivalent products are both pharmaceutical equivalents and bioequivalents.

34.     Products are considered to be pharmaceutical equivalents if they contain the same active ingredient, they are of the same dosage form and route of administration, and they are identical in strength or concentration. They must also meet identical standards of quality, purity and potency.

35.     Products are considered bioequivalent products if they deliver the active ingredients to the body at the same rate and with the same level of absorption. For pharmacists

and other medical professionals, the requirement of bioequivalence ensures that a generic product substituted for the prescribed brand-name product is truly interchangeable and will provide the patient with the treatment the doctor ordered. This is critical because the doctor, not the wholesaler, distributor or pharmacist, is responsible for making the appropriate treatment decisions and tracking the patient's progress.

36. State law governs pharmacy practice, including generic substitution. Most state laws explicitly require that a substitute product be both pharmaceutically equivalent as well as bioequivalent, and hence "therapeutically equivalent" to the drug prescribed. In Louisiana, state law defines an "'Equivalent drug product'" to mean "a drug product that has been rated as a pharmaceutical equivalent by the federal food and drug administration (FDA) and has the same established name, active ingredients, strength or concentration, dosage form, and route of administration and which is formulated to contain the same amount of active ingredients in the same dosage form and to meet the same compendial or other applicable standards such as strength, quality, purity, and identity, but which may differ in characteristics such as shape, scoring, configuration, packaging, excipients including colors, flavors, preservatives, and expiration time." La. Rev. Stat. 37:1164(16).

37. Thus, pharmacists and other medical professionals expect that a product advertised, promoted and sold as a generic will be pharmaceutically equivalent, bioequivalent and therapeutically equivalent to the brand.

38. Notwithstanding Defendant's advertising and promotional efforts, DuLeek is not a generic equivalent to or substitute for DEPLIN. DuLeek does not contain L-methylfolate. Rather, it contains folic acid, a different ingredient. Because DuLeek does not contain the same active ingredient in the same strength, DuLeek is not pharmaceutically equivalent to DEPLIN.

39. Defendant has not published or, upon information and belief, performed or commissioned any studies demonstrating that DuLeek delivers its active ingredients to patients at the same rate and in the same amount as DEPLIN. In the absence of testing, DuLeek cannot be presumed to be bioequivalent to DEPLIN. In fact, the folic acid in DuLeek is not bioequivalent to the L-methylfolate in DEPLIN.

40. Plaintiff has been and will continue to be harmed by Defendant's literally and impliedly false and misleading advertising and unfair competition. Defendant's marketing efforts have misled consumers into believing that its product is a generic equivalent to and substitute for DEPLIN. As a result, substitutions of DuLeek for DEPLIN have eroded and will continue to erode DEPLIN's sales and goodwill as well as Plaintiff's revenues.

41. On information and belief, patients who have received DuLeek in substitution for DEPLIN prescriptions have not achieved the same beneficial results as the patients experienced when taking DEPLIN. This has in effect interrupted these patients' anti-depressant therapy, potentially causing a worsening of symptoms which can include feelings of helplessness, hopelessness and despair, and could include suicidal ideation, suicide attempts and completed suicides.

42. Plaintiff does not and cannot control the safety, effectiveness or quality of Defendant's inferior product. Thus, doctors and patients who suffer bad experiences with DuLeek that is substituted for prescriptions of DEPLIN are likely to think less of both Plaintiff and DEPLIN.

## COUNT 1:

## VIOLATION OF LANHAM ACT SECTION 43(A) (FALSE ADVERTISING)

43.     Plaintiff incorporates the allegations of the preceding paragraphs as though fully set forth herein.

44.     Seton markets DuLeek to drug databases, wholesalers, pharmacies, pharmacists and others in interstate commerce as a generic to and substitute for DEPLIN.  Seton intends for these potential customers to believe that DuLeek is generic to and substitutable for DEPLIN, and to purchase DuLeek in place of DEPLIN.

45.     Seton's promotional claims about DuLeek are literally and/or impliedly false and misleading.  DuLeek is not pharmaceutically equivalent to, generic to, or substitutable for DEPLIN.  Seton's promotional claims violate Section 43(a) of the Lanham Act, which provides in relevant part that "any person who, on or in connection with any goods or services, . . . uses in commerce any . . . false or misleading description of fact or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable to a civil action by any person who believes that he or she is likely to be damaged by such act."

46.     Additionally, Defendant is liable for false advertising under the Lanham Act because it intentionally induced and/or knew or had reason to know that drug databases, wholesalers, pharmacies, pharmacists and others in the pharmaceutical distribution chain would falsely describe DuLeek as generic to and a substitute for DEPLIN to pharmacists, but continued to sell the products to those entities.

47. By reason of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, damage to its business, reputation and goodwill. Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to damages for Defendant's Lanham Act violations, an accounting of profits made by Defendant on sales of its product, and recovery of Plaintiff's costs for this action.

48. Given Defendant's knowledge that DuLeek uses folic acid as an ingredient and not the dietary ingredient L-methylfolate, Defendant's acts are willful, wanton and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling Plaintiff to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

49. Unless enjoined by this Court, Defendant's acts will irreparably injure Plaintiff's goodwill and erode its market share. Pursuant to 15 U.S.C. § 1116, Plaintiff is entitled to preliminary and permanent injunctive relief to prevent Defendant's continuing acts.

## COUNT 2:
## VIOLATION OF LANHAM ACT SECTION 43(A) (UNFAIR COMPETITION)

50. Plaintiff incorporates the allegations of the preceding paragraphs as though fully set forth herein.

51. Pamlab has become uniquely associated with DEPLIN, and the public identifies Pamlab as the source for DEPLIN.

52. Seton has marketed and continues to market DuLeek as a generic to and a substitute for DEPLIN, and in doing so, has deceived, misled and confused consumers. This has enabled Seton to trade off of Pamlab's reputation and good will.

53. Given Defendant's knowledge that DuLeek uses folic acid as an ingredient and not the dietary ingredient L-methylfolate, the aforesaid acts were undertaken willfully and deliberately.

54. Defendant's acts constitute unfair competition in violation of Section 43(a) of the Lanham Act.

55. Additionally, Defendant is liable for unfair competition under the Lanham Act because it intentionally induced and/or knew or had reason to know that drug databases, wholesalers, pharmacies, pharmacists and others in the pharmaceutical distribution chain falsely describe DuLeek as a generic to and substitute for DEPLIN to pharmacists, but continued to sell the products to those entities.

56. By reason of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, damage to its business, reputation and goodwill.  Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to damages for Defendant's Lanham Act violations, an accounting of profits made by Defendant on sales of DuLeek, and recovery of Plaintiff's costs for this action.

57. Defendant's acts are willful, wanton and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling Plaintiff to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

58. Unless enjoined by this Court, Defendant's acts will irreparably injure Plaintiff's goodwill and erode its market share.  Pursuant to 15 U.S.C. § 1116, Plaintiff is entitled to preliminary and permanent injunctive relief to prevent Defendant's continuing acts.

### COUNT 3:
### VIOLATION OF LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

59. Plaintiff incorporates the allegations of the preceding paragraphs as though fully set forth herein.

60. Defendant's conduct, including its false and misleading statements about DuLeek and DEPLIN and palming off and improper substitution of DuLeek for DEPLIN violates Section

51:1405(A) of the Louisiana Unfair Trade Practices and Consumer Protection Law (UTPCPL) which declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

61.     The Defendant's unfair methods of competition and unfair or deceptive acts or practices include, but are not limited to, violations of Section 51:411 of the Louisiana Revised Statutes which provides in relevant part that, "[n]o person, with intent to sell or in any way dispose of merchandise, . . . or anything directly or indirectly, to the public for sale or distribution, or with intent to increase the consumption, or to induce the public in any manner to enter into any obligation relating thereto, . . . shall make, publish, disseminate, circulate, or place before the public, or cause directly or indirectly to be made, published, disseminated, circulated, or placed before the public, in this state, . . . an advertisement of any sort regarding merchandise, securities, service or anything offered to the public, which advertisement contains any assertion, representation or statement of fact which is untrue, deceptive or misleading."

62.     As a result of Defendant's violations of the UTPCPL, Plaintiff has suffered and unless such acts and practices are enjoined by this Court, will continue to suffer, irreparable injury and damage to its business, reputation and goodwill for which it is entitled to relief.  In addition Plaintiff is entitled to damages and attorney's fees for Defendant's UTPCPL violations.

## **COUNT 4:**
**CIVIL CODE ART. 2315**

63.     Plaintiff incorporates the allegations of the preceding paragraphs as though fully set forth herein.

64.     Defendant's tortious conduct, including its false and misleading statements about DuLeek and DEPLIN and palming off and improper substitution of DuLeek for DEPLIN render Defendant solidarily liable to Plaintiff for damages to its business, reputation and goodwill.

**PRAYER FOR RELIEF**

Plaintiff prays for the following relief:

A.      A judgment and order that Defendant, its agents, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with it, be preliminarily and permanently enjoined from directly or indirectly falsely advertising or promoting the products or inducing others to substitute DuLeek for prescriptions of DEPLIN;

B.      A judgment and order that Defendant, its agents, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with it, be preliminarily and permanently enjoined from making or inducing others to make any false, misleading or deceptive statement of fact, or representation of fact in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of its product in such fashion as to suggest that DuLeek contains L-methylfolate, and/or is pharmaceutically equivalent, therapeutically equivalent or bioequivalent to DEPLIN, or can be freely interchanged with or substituted for prescriptions of DEPLIN;

C.      A judgment and order that Defendant, its agents, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with it, be preliminarily and permanently enjoined from marketing DuLeek or any other product substitutable for DEPLIN or that they represent as a generic equivalent of DEPLIN;

D.      A judgment and order that Defendant, its agents, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with it, be preliminarily

and permanently enjoined from placing, and are ordered to remove, information linking DuLeek to DEPLIN in any drug dispensing databases in the United States;

E. A judgment and order that Defendant include in any advertisement or promotion comparing DuLeek with DEPLIN, whether oral or written, a notice in location and typeface as prominent as the comparison itself, that its product "does not contain L-methylfolate and is not pharmaceutically or therapeutically equivalent to DEPLIN";

F. A judgment and order that Defendant take corrective action to correct any erroneous impression persons may have derived concerning the nature, characteristics, or qualities of the products or DEPLIN, including without limitation the placement of corrective advertising to prevent the inducement of others from substituting DuLeek for prescriptions of DEPLIN;

G. A judgment and order granting Plaintiff such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression concerning the nature, characteristics, or qualities of DuLeek or from inducing others to substitute DuLeek for prescriptions of DEPLIN;

H. A judgment and order requiring Defendant to pay Plaintiff damages under 15 U.S.C. § 1117(a) and La.R.S. 51:1409 in the amount of Plaintiff's actual and consequential damages and any profits of Defendant resulting from its advertisements and marketing of its products;

I. A judgment and order requiring Defendant to pay Plaintiff all of its reasonable attorneys' fees, costs and expenses, including those available under 15 U.S.C. §1117(a) and any other applicable law;

J. A judgment and order finding that this is an exceptional case and requiring Defendant to pay Plaintiff additional damages equal to three times the actual damages awarded

Plaintiff pursuant to 15 U.S.C. § 1117(a), as well as all of Plaintiff's reasonable attorneys' fees under 15 U.S.C. § 1117(a) and any other applicable law;

K.  A judgment and order requiring Defendant to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded; and

L.  Such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands that all issues be determined by jury.

Dated: September 30, 2010

Respectfully submitted,

By:  *s/Robert S. Rooth*
Robert S. Rooth, T.A. (# 11454)
Corrine A. Morrison (# 9737)
Stephanie W. Cosse (#31677)
**CHAFFE McCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: 504.585.7000
Telecopier: 504.544.6088
rooth@chaffe.com
morrison@chaffe.com
cosse@chaffe.com

**Of Counsel**:
Saul Perloff (TX # 00795128)
Katharyn Grant (TX # 24050683)
**FULBRIGHT & JAWORSKI L.L.P.**
300 Convent Street, Suite 2200
San Antonio, Texas 78205
Telephone: 210.224.5575
Telecopier: 210.270.7205
sperloff@fulbright.com
kgrant@fulbright.com

**ATTORNEYS FOR PLAINTIFF
PAMLAB, L.L.C.**